IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHER N DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**CONRAD EUGENE HAMMAN,**

      **Petitioner,**

**v.**                               **No.   5:03cv66/MMP/MD**

**JAMES V. CROSBY,**

      **Respondent.**

_____

### REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 14) to which petitioner has replied (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

### BACKGROUND and PROCEDURAL HISTORY

      Petitioner was charged in the Circuit Court of Bay County, Florida with armed burglary of a structure, criminal mischief, possession of burglary tools, battery on a law enforcement officer, grand theft, and resisting an officer without violence. Defendant appeared in court on October 22, 1998 and the court appointed the public

defender's office to represent him (doc. 15, exh. B, B224).[1]  He was again in court on December 12, 1998 and informed the court that he had "fired" his public defender, Ms. Beller, claiming that she had not visited him at the jail until the day before, and then only for the purpose of attempting to convince him that he should take the state's offer of a two year sentence when he was facing thirty years if convicted (B228-29).  He asked the court to assign another lawyer, but the court refused, holding that defendant had not given sufficient justification (B230-31).  Defendant appeared again on January 5, 1999 and again stated that he had fired his lawyer because she had done nothing to prepare a defense and was interested only in a plea.  He therefore would not talk to her.  Ms. Beller stated that notwithstanding her being fired, she was preparing for trial and had scheduled depositions of witnesses. The court again refused to appoint new counsel, and informed defendant that he could be represented by Ms. Beller or he could represent himself, but would not have another attorney (B235-240).  Defendant was also told that given his prior record, he probably qualified for sentencing as an habitual felony offender, which Ms. Beller confirmed (B242).  The state indicated that it would agree to a two year sentence, because it did not yet have certified copies of prior convictions, and would concede the ones defendant contested for purposes of a plea bargain.  Since defendant would not discuss a plea bargain, the court told the state to order its certified copies (B243).  Trial was scheduled for February 2, 1999.

On February 2, 1999 defendant again appeared and again confirmed that he refused to be represented by Ms. Beller.  The court therefore conducted a hearing, informed defendant that he would be represented by Ms. Beller or would represent himself, and that he was making a serious mistake by not using the lawyer afforded

---

[1] Hereafter all references to exhibits will be to doc. 15 unless otherwise noted.  The pages in exhibit B are not sequentially numbered, nor are the proceedings they cover in chronological order.  The bulk of the exhibit comprises the trial transcript, which was numbered by the court reporter.  The trial transcript follows some pre- and post-trial proceedings, with Bates stamp numbers 0087 - 0184.  Following the trial transcript are more pre-trial proceedings with Bates stamp numbers 0222 - 0307.  In this report and recommendation, page references to  exhibit B will be to Bates stamp numbers (e.g. B222) or to the trial transcript (e.g. T25).  The respondent makes the court's work more burdensome by presenting such a jumbled exhibit.

him (B250-62).  He was also informed that his criminal record would lead to a possible life sentence if he were convicted and habitualized (B255).  The trial date was passed.

On February 16, 1999 defendant told the court that there was a conflict of interest in Ms. Beller's representing him but did not identify one.  On once again being asked whether he would allow Ms. Beller to represent him or would represent himself, he proclaimed that he had no choice, but Ms. Beller would not be his attorney.  The court therefore found that he had chosen to represent himself and appointed Ms. Beller as standby counsel (B271-77).  On March 2, 1999 defendant confirmed that he had received copies of the depositions Ms. Beller had taken but that there were some pages missing.  Ms. Beller indicated that the missing pages were being sent to him.  Defendant also complained that while the state had listed ten witnesses, Ms. Beller had taken only six depositions, and that he wanted to take depositions of the remaining witnesses.  The court informed him that he could not take depositions, but his attorney could if he would let her.  Defendant again refused to allow Ms. Beller to assist him.  After further discussion, defendant agreed - more precisely he refused to disagree - that Ms. Beller could take the deposition of Officer Harris, the only one of the four that the state intended to call (B278-89).  On March 5, 1999 defendant again confirmed that he would not allow Ms. Beller to represent him.  The court then went so far as to inform defendant that Ms. Beller was one of the better attorneys in town and that he was making a mistake (B294-99).  Petitioner would not relent.

At jury selection on March 8, 1999 defendant told the jury that the court had refused to appoint counsel for him.  The court admonished him outside the presence of the jury and told him not to make untrue statements to the jury.  When he did it again, the court informed the jury that defendant had been offered counsel but had

decided to represent himself (B112-129).[2]

Trial began on March 10, 1999.  The state presented seven witnesses.[3]  The manager of the Westwinds Bar, Ms. Southerland, testified that defendant was at the bar from 5:00 p.m. until 1:30 a.m. on the night and morning of September 13 and 14, 1998, and that although he was drinking, he did not seem intoxicated.  She closed the bar at around 2:00 a.m., and was later called to the bar because of a burglary. She found the jukebox smashed, and the police handed her $307 in cash.  She always left $200 in start-up money in a can, and that was missing, as were some packs of cigarettes (T22-29).  William Tant testified that he lived next to the Westwinds Bar, and was up very early on the morning of September 14.  He saw a man acting suspiciously, and called the police.  He heard breaking glass, and saw the man leave the area and then return and go into the bar.  The police arrived and set up a perimeter outside the bar.  He heard the police order someone to get down and advise the individual that he was under arrest (T40-47).

Five police officers testified.  According to their testimony they were dispatched to the bar and set up a perimeter.  One of them saw someone, the defendant, inside the bar hammering or banging on the jukebox.  When defendant exited the bar he was arrested and handcuffed.  He was found to be carrying a "wad" of money and an ice pick.[4]  He was put in the rear seat of a police cruiser but

---

[2] The court also held a separate proceeding in which petitioner was found in contempt and sentenced to six months imprisonment.  The sentence was later vacated given petitioner's conviction and resulting life sentence.

[3] The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury will assist in understanding the case.

[4] At trial and here defendant makes much of the supposed conflicting testimony concerning the money and the icepick.  Officer Miller testified that Officer Harris removed the icepick from defendant's pocket and Officer Clayton found the money.  He later said that Clayton found the icepick and Harris found the money. Harris testified that he found the money.  Clayton did not testify.  Regardless, there was no evidence that defendant was not in possession of either the money or the icepick.

somehow slipped his handcuffs and started kicking at the car windows.  He was removed from the car, and in the process fell, cutting his head on the pavement.  He was recuffed and later taken to the emergency room.   While there he acted belligerently, cursed the medical staff and the police, and refused treatment.  He spit in one officer's face. All officers who testified identified the defendant as the subject of the arrest and ensuing events.  They also stated that while defendant appeared to be intoxicated to the extent that he should not be driving, he was in obvious control of his faculties, was coherent, walked without assistance, and appeared to know what was happening (T57-139).

The state rested just before noon on Wednesday, March 10.  The court sent the jury to lunch.  Ms. Beller then stated that defendant's witness, Dr. Heape, who treated the defendant at the emergency room, had not appeared after having been subpoenaed.  It was determined that Dr. Heape was out of town and would not be available until that Friday.   One of the jurors indicated that he was unavailable Friday, but all jurors said they could return Monday.  Defendant asked for a mistrial, arguing that the jurors would forget the evidence they had heard, and that they would talk about the case and read about it over the week-end.  The court denied the motion for mistrial and continued the trial until Monday after admonishing the jury not to discuss or read about the case (T154-165).  On Monday morning trial resumed after the court inquired of the jury.  Some of the jurors said that they had seen a picture of defendant in the paper but had not read the article or the associated headline (T176-178).

Defendant called Dr. Heape, whose testimony was not favorable.  The doctor testified generally that defendant was combative and intoxicated, but that his behavior was not due to alcohol or drugs.  Defendant's actions were inconsistent with severe intoxication, and it was obvious that he was malingering by pretending not to hear the doctor speaking to him while at the same time giving clear physical signs to the contrary.  A blood test disclosed a blood/alcohol level of 0.13, which

was not high enough to warrant the degree of aggressive behavior defendant displayed (T179-194).

The jury found defendant guilty of armed burglary, petit theft, resisting an officer without violence, criminal mischief, possession of burglary tools, and battery on a law enforcement officer (T262-263).  At sentencing on April 6, 1999 the state proved that defendant met the requisite qualifiers for habitualization, and the court sentenced him to life in prison on the count of armed burglary, ten years concurrent for possession of burglary tools and battery on a law enforcement officer, and time served on the remaining misdemeanor counts.

Defendant appealed his conviction and sentence, claiming as error: (1) vindictive sentence, (2) not allowing defendant to take a deposition, and (3) not appointing substitute counsel (exh. D).  The Florida First District Court of Appeal (First DCA) affirmed without opinion.  *Hamman v. State*, 778 So.2d 285 (Table) (Fla. 1st DCA 2001).  Defendant then filed a petition with the First DCA, which he titled "PETITION FOR WRIT OF HABEAS CORPUS (INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL)."  There he claimed ineffective assistance of appellate counsel.  He contended that his appellate counsel was ineffective because he failed to raise the following issues on appeal: (1) failure to appoint substitute counsel, (2) failure to conduct a *Nelson*[5] hearing, (3) failure to conduct a sufficient *Faretta*[6] inquiry, (4) failure to renew the offer to appoint counsel at each stage of the proceeding, (5) insufficient evidence to support conviction for armed burglary, (6) prosecutorial misconduct in telling jury icepick was a dangerous weapon, (7) error in restricting defendant's cross-examination of state witnesses, (8) error in failure to grant mistrial, (9) prosecutorial misconduct in telling jury state charges only those offenses it can prove, (10) trial court partiality in telling state to order certified copies of prior convictions, and (11) error in imposition of habitual felony offender sentence

---

[5]  *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973).

[6]  *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

(exh. H).  His petition was denied without opinion.  *Hamman v. State*, 812 So.2d 407(Table) (Fla. 1ˢᵗ DCA 2002).

Defendant next filed a Fla. R. Crim. P. 3.850 motion for post-conviction relief in the trial court, claiming (1) error in  continuing the trial rather than granting a mistrial when Dr. Heape did not appear on time, (2) insufficient evidence to support a finding of guilt of armed burglary, (3) insufficient evidence to support a finding of possession of burglary tools, (4) denial of counsel, (5) error in restricting his cross-examination of state witnesses, (6) error in imposing habitual felony offender sentence, (7) error in denial of new trial, (8) ineffective assistance of counsel in post-trial proceedings (exh. I).  The trial court denied the motion in a written opinion holding that all grounds raised were raised on appeal, or should have been, and were meritless (exh. J), and the First DCA affirmed without opinion.  *Hamman v. State*, 835 So.2d 1114 (Table) (Fla. 1ˢᵗ DCA 2002).  Petitioner now brings this federal habeas petition raising the following grounds for relief:

1.      Vindictive sentence.

2.      Denial of right to conduct discovery.

3.      Trial court error in refusing to appoint counsel.

4.      Trial court error in refusing to appoint substitute counsel.

5.      Trial court error in failing to conduct *Nelson* inquiry.

6.      Trial court error in failing to conduct *Farretta* inquiry.

7.      Trial court continuing error in failing to offer appointed counsel.

8.      Fundamental error by conviction without supporting evidence.

9.      Prosecutorial misconduct in telling the jury that an icepick is a dangerous weapon.

10.     Trial court error in restricting cross-examination of adverse witnesses.

11.     Trial court error in failing to grant mistrial but instead continuing case.

12.     Prosecutorial misconduct in telling the jury that the state charges only crimes it can convict..

13.    Judicial partiality, in telling the state to obtain certified copies of convictions.

14.    Trail court error in imposing habitual offender sentence.


## SECTION 2254 REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two

conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the state court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely:  "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the state court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  If the state court decision is found in either respect to be contrary, the district

court must independently consider the merits of the petitioner's claim. If on the other hand, the state court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. The state court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the state court adjudication results in a "satisfactory conclusion." *Id.* 529 U.S. at 410-12, 120 S.Ct. at 1522-23.

Only if the federal habeas court finds the state court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum). When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## DISCUSSION

Although petitioner has advanced fourteen grounds for relief, there is much overlapping and duplication in his claims and arguments. The court has therefore rearranged petitioner's claims into groupings that can be dealt with logically:

1. <u>Vindictive sentence.</u>

Petitioner raised a claim of vindictive sentence in his direct appeal; however, he did not present the issue as one of federal law. Thus, any challenge to petitioner's sentence on federal grounds does not appear to have been properly exhausted.[7] It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, presenting to the state courts for consideration each issue upon which federal review is sought. *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); 28 U.S.C. § 2254(b) and (c). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277-78; *Anderson v. Harless*, 459 U.S. 4, 74 L. Ed. 2d 3, 103 S. Ct. 276 (1982).

The fair presentment requirement has been broadly interpreted in the past.

---

[7]Unfortunately, respondent's counsel did not specifically address the exhaustion question, but stated simply that the vindictive sentence issue was "raised" in petitioner's direct appeal (doc. 14, p. 8). Counsel then at least implicitly waived the exhaustion requirement by proceeding to argue the merits. However, "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). The Eleventh Circuit recently emphasized that waiver "must be express and explicit . . . ." *Nelson v. Schofeld*, __ F.3d __, 2004 WL 1152033, *2, fn. 4 (11th Cir. 2004) (holding that although state addressed issue on the merits, there was no express waiver in the record, thereby allowing federal court to apply exhaustion requirement). There was no express waiver here.

*See, e.g.*, *Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position). The Supreme Court readdressed this issue in *Duncan v. Henry*, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. In finding petitioner's federal due process claim to be unexhausted, the *Duncan* Court explained that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." 115 S.Ct. at 888. As the Supreme Court previously instructed, "[T]he requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L.Ed.2d 318 (1992). Instead, "the petitioner [must] afford the State a full and fair opportunity to address and resolve the claim on the merits." *Id*.

Here, in his direct appeal petitioner argued that the trial court's sentence was subject to challenge based on a line of Florida cases dealing with judges participating in plea negotiations, and then sentencing more severely than what was discussed in the negotiations: *City of Daytona Beach v. Del Prado*, 476 So.2d 197 (Fla. 1985); *Gillman v. State*, 373 So.2d 935 (Fla. 2nd DCA 205 1985); *Galluci v. State*, 371 So.2d 148 (Fla. 4th DCA 1979). However, he did not present the state court with a federal issue. The only mention of any federal law in petitioner's brief was a

reference to *Gillman, supra*, as citing *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209 (1968). But in *Jackson* the Supreme Court addressed the effect of the Federal Kidnapping Act, 18 U.S.C. § 1201, which provided a possible death penalty *only* if recommended by a jury. The court reasoned that this portion of the law was constitutionally infirm because it required a defendant to decide whether to plead guilty and avoid any possibility of the death penalty, or exercise his right to trial and risk death. To the extent that *Jackson* was mentioned at all in petitioner's appeal, it hardly fits the facts of this case. Petitioner here was not given such a draconian choice. The possibility of a life term was always on the table, and petitioner's decision to accept or reject a plea offer was his to make.[8]

Petitioner did not present the court with a federal question. He did not argue that the trial court's sentence violated any federal right he had. Thus, the state court was not given the full and fair opportunity to address petitioner's federal claims. This claim was therefore not properly exhausted. If a petitioner failed to raise an issue in the state court and under state law would now be procedurally barred from doing so, the federal court will apply the state procedural default law and hold the claim to be barred. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger,* 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

To overcome a procedural default, a petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at, 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the

---

[8]*See, e.g., Anderson v. Harless*, 459 U.S. 4, 7 and n. 3, 103 S.Ct. 276, 278 and n. 3, 74 L.Ed.2d 3 (1982) ("We doubt that a defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the *cited* case advanced a federal claim. However, it is clear that such a citation is insufficient when, as here, the federal claim asserted in the cited case is not even the same as the federal claim on which federal habeas relief is sought.") (citation omitted).

reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* Here petitioner did not present a federal claim to the state courts. It is too late for him to do so now, and he has not presented any cause for his failure to do so. This claim is therefore procedurally defaulted, and cannot be considered by this court.

Even if this court were to find that petitioner apprised the state court of the federal nature of his claim, he still would not be entitled to federal habeas relief. As was noted above, this court can grant federal habeas relief only if the state court's adjudication was contrary to clearly established Supreme Court law. There is no such law on this issue. That is, the Supreme Court has never considered the issue of whether any federal rights are violated where the trial judge participates in plea negotiations and then imposes a harsh sentence. The only instances in which the Supreme Court has addressed vindictive sentencing involved the imposition of more severe sentencing after a successful appeal. *See, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (holding that there is no presumption of vindictiveness when a harsher sentence is imposed after the successful appeal of a guilty plea, and that the burden is on the defendant to prove vindictiveness). The court has never held that there is any constitutional issue, much less a presumption of vindictiveness, under the facts of the case now before this court.

The Eleventh Circuit recently instructed that in applying the "contrary to" prong of § 2254 where there is no Supreme Court precedent on point, a federal habeas court cannot say that a state court adjudication is contrary to clearly established federal law. *Washington v. Crosby*, 324 F.3d 1263 (11th Cir. 2003). Likewise, if there is no clearly established Supreme Court law, the state court's decision cannot be an unreasonable application of federal law. Moreover,

"decisions of . . . federal circuit courts . . . are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts . . . to decide in a definite way the case before them." *Hawkins v. Alabama*, 318 F.3d 1302 (11th Cir. 2003).

Even so, the First Circuit recently considered facts and issues similar to these in *Corriea v. Hall*, 364 F.3d 385 (1st Cir. 2004). There the defendant had been offered a plea bargain, but elected to go to trial. When convicted he was sentenced to a term significantly higher that what had been offered. The First Circuit affirmed the district court's denial of federal habeas relief, holding that the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law. It cited a line of federal cases dealing with vindictive sentencing after a successful appeal, including *Alabama v. Smith, supra*, but without any analysis of whether these cases established the federal law to be applied on these facts. If, for the sake of argument, the *Alabama v. Smith* jurisprudence has clearly established federal law on the subject, petitioner is still not entitled to relief. Central to that jurisprudence is the holding that when a trial judge hears all the evidence at trial, he or she learns a great deal about the facts of the case and the true nature of the defendant's behavior in committing the crimes. Additional detail is learned about the defendant where, as here, the full extent of the defendant's prior criminal history is disclosed at sentencing. Thus, the Supreme Court held in *Alabama v. Smith* that the burden is on the defendant to show vindictiveness. Petitioner here cannot do so.

The transcripts clearly show that when the state was discussing a plea agreement in open court, there was a question about the validity of some prior convictions, without which petitioner could not be habitualized. The state agreed to give the petitioner the benefit of the doubt on those prior convictions and accept a sentence that would not habitualize him. Moreover, when this was being discussed the maximum possible sentence was thirty years. The state later

amended its charges to substitute armed burglary for simple burglary, bringing the maximum possible penalty to life.  At sentencing the court learned the full extent of petitioner's criminal past and imposed a life sentence.  Beyond petitioner's conclusory claims, there is nothing in the record suggesting that the court sentenced petitioner to life as punishment for his election to go to trial.

Petitioner is not entitled to relief on his first claim.  He did not exhaust it in the state court by presenting a federal claim.  Even if he had, there is arguably no clearly established federal law on this issue, meaning that this court cannot find that the state court's adjudication is contrary to or an unreasonable application of clearly established federal law.  Finally, even if the ruling in *Alabama v. Smith* is extended to encompass these facts, petitioner has not carried his burden of showing vindictiveness.

   2.   Denial of right to take depositions.

As his second ground for relief petitioner asserts that the trial court erred in not allowing him to take the deposition of a state witness.  This issue was presented in petitioner's direct appeal.  There he argued that his right to self representation, guaranteed by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), was violated.  He argued that discovery is a critical stage of a criminal proceeding (but without citing any authority for that proposition), and that since petitioner was representing himself he should have been allowed to take the deposition himself.

In *Faretta*, which will be discussed in more detail below, the Supreme Court held that a defendant who insists on representing himself has the constitutional right to do so.  The trial court here conducted a *Faretta* hearing on February 16, 1999 and told petitioner that because he refused the assistance of the public defender, he was representing himself (B271-77).   On March 2, 1999 the question arose concerning the deposition of Officer Harris.  The court explained to the petitioner that he did not have the right to take depositions due to his incarceration, and

directed Ms. Beller, now standby counsel, to do so (B278-89).

Assuming for the moment that at the time this issue arose plaintiff was in fact representing himself at his own request, he still has not shown a federal constitutional violation.  There is no federal authority for the proposition that a *pro se* defendant is entitled to take depositions.  Indeed in  federal criminal cases no depositions are allowed except to preserve a witness' testimony for trial, and then only upon a showing of good cause.  Fed. R. Crim. P. 16, 15.  There is no constitutional right to take discovery, much less to be present at a deposition.  Petitioner has not cited to any case, much less a Supreme Court case, that gives an incarcerated *pro se* defendant the right to take depositions, nor has this court found any such authority.

Moreover, petitioner did not request self representation directly.  Rather, he took the unusual path of refusing counsel who had been appointed to represent him.  The court made him fully aware that his opportunities to prepare a defense would be severely limited if he refused the counsel offered him, but he made the decision to refuse assistance.   Nothing the state courts did was contrary to or an unreasonable application of clearly established federal law, and petitioner is not entitled to habeas relief.

3.  Denial of appointed counsel.

In petitioner's third and fourth grounds for relief he complains of the trial court's actions in refusing to appoint substitute counsel for him.  In his direct appeal he raised this same claim.[9]  The events leading up to petitioner's decision to refuse counsel and, by default, to represent himself, are detailed above.  Petitioner asserts that he was denied the right to counsel and was forced to represent himself against his expressly stated will, but that is not an accurate statement of the facts.  Petitioner was afforded appointed counsel.  He did not like his appointed counsel,

_____

[9]  Plaintiff also argues that the trial court erred in appointing counsel only as stand-by, but this is the same argument.  The underlying claim is that petitioner did not get counsel of his own choosing.

*Case No: 5:03cv66/MMP/MD*

claiming that she was not representing his interests and was only interested in a plea. The court held a hearing and determined that counsel was competent and was preparing for trial, and was also discharging her duty as an attorney by informing petitioner of a plea offer and giving him a recommendation. Petitioner refused to believe that counsel was competent and was acting in his best interests, but the trial court determined otherwise.

Petitioner thus placed himself in what turned out to be an untenable position. He was told that he could either accept the services of the attorney appointed to represent him, or he could represent himself. From this petitioner asserts that he was forced to represent himself, but that is inaccurate. Petitioner's choices should actually be described somewhat differently: he could either accept the attorney appointed for him, or he could reject her. The effect of his choosing to reject counsel was that he had no attorney, and the effect of his having no attorney was self-representation. He was given every possible opportunity to accept his attorney. By refusing to do so, he elected to represent himself by default.

"It is hardly necessary to say that . . . a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). And a defendant has the absolute right, if he is competent to choose to exercise the right, to represent himself in a criminal proceeding. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that the Sixth Amendment guarantees the right of self-representation when a defendant requests it and is competent to make that request). However, the Supreme Court has never addressed the question raised here: whether by rejecting appointed counsel, a defendant has the right to substitute appointed counsel. Accordingly, petitioner has not shown that the state court's decisions and actions in refusing to appoint substitute counsel were contrary to, or an unreasonable application of, clearly established federal law.

While this court is concerned only with Supreme Court precedent, it is noted

that in the Eleventh Circuit, an indigent defendant for whom counsel is appointed is not entitled to counsel of his own choosing. *United States v. Brown*, 591 F.2d 307 (5th Cir. 1979) (holding that where counsel is offered, but a defendant refuses the offer because he claims that public defenders are generally incompetent, he has elected to represent himself, and cannot later complain of the quality of his *pro se* representation).[10]  Nothing in the *Faretta* decision suggests otherwise.

Furthermore, there is also state court authority that rejects petitioner's position.  In *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973), the court held that where a defendant, before commencement of trial, requests discharge of his court-appointed counsel, the trial judge should make an inquiry as to his reason for the request and, if incompetency of counsel is assigned as reason, should make a sufficient inquiry of defendant and his appointed counsel to determine whether there is cause to believe that counsel is not rendering effective assistance.  If reasonable cause for such belief appears, the trial judge should make a finding to that effect on the record and appoint substitute counsel.  But if no reasonable basis for such belief appears, the trial judge should so state on the record and advise defendant that if he discharges his original counsel the court will not thereafter be required to appoint a substitute.  Here state law imposed no obligation, short of a finding that appointed counsel was incompetent to represent him or was under a conflict of interest, to appoint other counsel.  The only alleged conflict was petitioner's disagreement with counsel's approach.  He voiced this from the start and refused even to discuss the case with Ms. Beller after their first meeting.  The court found, however, and told petitioner, that Ms. Beller was an experienced and competent attorney, and that there was no conflict sufficient to require the appointment of another attorney.

4. <u>Other claims for relief.</u>

The rest of petitioner's claims for relief are restatements of the claims he

---

[10]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

raised in his state court petition for writ of habeas corpus, but with a distinction that makes a difference.    In the state court he raised all these claims in terms of ineffective assistance of counsel - that his appellate counsel was ineffective for failing to raise them in his direct appeal.[11]  That is not what he argues here, however. Rather, he asserts that this court should address these alleged errors.  Respondent correctly argues that these issues were not exhausted in the state courts.  Petitioner has not presented the listed issues fully and fairly to the state courts for consideration.  When the First DCA rejected petitioner's claims that his appellate counsel was ineffective, it may have at least impliedly found that the underlying claims, those advanced here, were without merit.  However, more goes into deciding an ineffective assistance of counsel claim that just considering the underlying alleged error, and this court cannot say that these claims were fully and fairly presented to the state court.  When petitioner later presented the same claims to the state court in his 3.850 motion he was too late, because they should have been raised on appeal.  These claims are therefore procedurally defaulted.  Petitioner has not shown cause for his failure to present them, and this is not a case of actual innocence.  This court will not address these claims on their merits.

And even if they were to be addressed here, issues 5 through 7 involve the appointment and rejection of counsel arguments in another guise, and are meritless as shown above.  The remaining claims are clearly refuted by the record (8, 10, 11, 13), or involve issues purely of state law (9, 12, 14).

---

[11]  The claims are:

5.    Trial court error in failing to conduct *Nelson v. State, supra*, inquiry.
6.    Trial court error in failing to conduct *Farretta* inquiry.
7.    Trial court continuing error in failing to offer appointed counsel.
8.    Fundamental error by conviction without supporting evidence.
9.    Prosecutorial misconduct in telling the jury an icepick is a weapon.
10.   Trial court error in restricting cross-examination of adverse witnesses.
11.   Trial court error in failing to grant mistrial but instead continuing case.
12.   Additional prosecutorial misconduct in telling the jury the state charges only crimes it can prove.
13.   Judicial partiality in telling state to get certified copies of prior conviction records.
14.   Trail court error in imposing habitual offender sentence.

## CONCLUSION

Petitioner has procedurally defaulted most of his claims, and has not shown that he is entitled to federal habeas relief on the others.  Accordingly, it is respectfully RECOMMENDED that the petition for habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Conrad Eugene Hamman*, in the Circuit Court of Bay County, Florida, case no. 98-2296, be DENIED and that the clerk be directed to close the file.

At Pensacola, Florida this 21st day of June, 2004.

/s Miles Davis
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).